## OWNERSHIP OF A CERTIFICATE OF STOCK.

Superior Court of Cincinnati.

J. N. RUSSELL, ADMINISTRATOR OF THE ESTATE OF J. N. RUSSELL, DECEASED, v. THE FOURTH NATIONAL BANK OF CINCINNATI.

Decided, November 5, 1913.

*Corporations—Certificate Outstanding for Stock Shown by Stock Ledger to Have Been Canceled—Cancellation Ordered by the Court.*

1. A sale of shares of capital stock of a bank is valid and binding although the seller retains the certificate of stock and the shares are transferred on the books of the bank without surrender of the certificate and in violation of the by-laws of the bank.
2. In an action by the administrator of such seller to recover the value of such shares from the bank, the production of the uncanceled certificate of stock raises a presumption of ownership of the shares by the deceased, but this presumption may be rebutted by proof that the deceased, after the issue to him of the certificate, sold the shares to a third person.
3. In such an action, where the court finds that the deceased sold his shares of stock but failed to deliver the certificate therefor to the purchaser or to surrender it to the bank, but that he never thereafter claimed the shares or demanded any dividends upon them, and that the shares were transferred to the buyer on the books of the bank without surrender of the certificate, and that thereafter the dividends were collected by the buyer or those deriving title to such shares from him, the court, in accordance with the prayer of the defendant's cross-petition to that effect, will order such certificate of stock to be delivered up and canceled.

*Morse, Tuttle & Ross,* for plaintiff.
*Charles B. Wilby,* contra.

PUGH, J.

The plaintiff, J. N. Russell, administrator of the estate of J. N. Russell, deceased, claims that his intestate, at the time of his death, was the owner of thirty shares of the capital stock of the Fourth National Bank of Cincinnati, and brings this action to have said shares transferred to him on the books of the bank and a new certificate issued to him therefor, or in the alternative for

the value of said shares in money, for an accounting for dividends due thereon, and for interest thereon.

The defendant denies that the plaintiff is administrator as claimed, denies that the deceased was owner of the shares of stock at the time he died, and sets up laches and the statute of limitations, and by way of cross-petition prays a surrender and cancellation of the certificate for said shares held by the plaintiff.

The controlling facts and circumstances in the case are not in dispute, the contention arising over the significance to be attached to them and the legal conclusions which follow.

In 1865, the deceased, J. N. Russell, became the owner of thirty shares of the capital stock of the defendant bank. The dividends were payable semi-annually in May and November, and it is proved that deceased received and receipted for the dividends paid during the years 1865 and 1866. It is equally clear that he never thereafter received any dividends or made any claim therefor.

In 1865, the deceased lived with his family at what was then the village of Linwood, Hamilton county, Ohio, and continued to live there up to the summer of 1889, when he removed with his family to Portland, Oregon, where he remained until his death, June 18th, 1895. As he left no estate, there was at first no administration. During the summer of 1911, the deceased's son, J. N. Russell, in looking over his father's papers discovered a certificate for thirty shares of stock of the defendant bank. It had never been transferred or canceled and, on its face, attested the ownership of the thirty shares by the deceased.

Later, on June 15th, 1912, the son was appointed administrator of his father's estate by the Probate Court of Multnomah County, Oregon, the only assets of the estate being the thirty shares of stock aforesaid. Demand was made on the bank for a new certificate to be issued to the administrator and for an accounting for the dividends on the stock since 1866 but the bank refused to recognize any ownership of the stock in the deceased or his administrator and this action was brought in December, 1912.

The plaintiff produces in court the original certificate and it is admitted that it was never surrendered to the bank and it shows on its face that it never has been canceled. It is further admitted that during the years 1865 and 1866, and ever since there has been in force a by-law of the bank as follows:

"By-law 10. The capital stock of the bank shall be transferable on the books of the bank in person or by attorney only on the surrender of the certificates."

Substantially, this is all the evidence plaintiff has produced to support his claim.

On the other hand, it appears the stock book of the bank containing transactions prior to 1872 has been lost since 1876 when the bank removed to a new location, but the stock ledger for the years 1865-1867 has been produced, and also the dividend receipt book. The former contains an account with J. N. Russell which shows that, on January 2d, 1865, he acquired thirty shares of the capital stock, and that he disposed of them to W. F. Colburn, January 9th, 1867. The same ledger contains an account with W. F. Colburn which shows that prior to 1867 he was the owner of eighty-two shares of the stock and that, on January 9th, 1867, he acquired thirty additional shares from J. N. Russell.

The testimony shows that, prior to 1902, shareholders called at the bank and received their dividends and receipted for them in the dividend receipt book, but that since 1902 checks for the dividends were sent to shareholders and no receipts were taken. As stated, the dividend receipt book for the years 1865 and 1867 was .produced, and it shows the following:

J. N. Russell receipted for semi-annual dividends on thirty shares of stock in May and November, 1865, and in May and December, 1866, and never thereafter receipted for any dividends.

W. F. Colburn receipted for a semi-annual dividend on eighty-two shares in November, 1866, and for semi-annual dividends on one hundred and twelve shares in May and November, 1867, and on ninety-five shares thereafter up to November 17th, 1870, having sold seventeen shares in 1868 as shown by the stock

ledger.  On November 17th, 1870, he sold his remaining ninety-five shares which also appears in the stock ledger, and thereafter his name does not appear in the dividend receipt book.

These book accounts show precisely what became of the thirty shares owned by the deceased.  It was urged at trial and again in counsel's briefs that this testimony is incompetent and can not in any way affect the plaintiff's claim as they were not made by him nor with his knowledge and consent, and that there is nothing to show that he ever saw or heard of these book accounts. But they are entries made in the regular course of business by the bank in its dealings with its stockholders, and in regard to transactions in which a privity existed between the parties.  As such they are competent evidence, though, of course, not conclusive as to existence of matters therein contained.

Furthermore it appears from the testimony that J. N. Russell continued to reside at Linwood for twenty-two years after the time, at which, according to the books of the bank he sold his shares of stock to Colburn, viz., from January 9th, 1867, to the summer of 1889 when he removed to Portland, Oregon. During this time, as the testimony shows, he was in reduced circumstances.  From the summer of 1889 to June, 1895, when he died, he lived at Portland, Oregon, a further period of six years, and during this period also, it appears that, while not in a condition of absolute poverty, he was not prosperous and certainly had no money to spare.

If the plaintiff's contention in this case is well founded, during this entire period of twenty-eight years, the deceased was the owner of this stock, whose par value was $3,000, and its actual value considerably more, and which produced dividends of $300 per annum, and yet never once did he draw his dividends or claim his stock.  He never told anyone that he ever owned any such stock.  When he left Linwood for Oregon, he was accompanied by his son, the administrator and plaintiff in this action, who was then a man of twenty-five years of age, and who continued to live with his father till the latter's death, and it is evident from the son's account of their manner of living that dividends of $300 per annum would have been a very wel-

come addition to the family income, yet at no time, either before or after leaving Linwood did he ever mention the existence of the $3,000 worth of bank stock which it is now claimed he owned during all that time. The son never knew that his father had owned stock in the Fourth National Bank until he found the certificate among his father's papers, sixteen years after the father's death, and forty-four years after his father had ceased to collect the dividends upon it.

As matter of fact the court finds it proven by the clear and convincing evidence of undisputed circumstances that the deceased, J. N. Russell, was not the owner of the thirty shares of stock in question, but had sold the same many years before to W. F. Colburn, as shown by the books of the bank.

The possession by the administrator of the deceased of the uncanceled certificate for said shares raises a presumption of ownership under the circumstances, but such presumption is not conclusive. It throws upon the defendant the burden of showing by the testimony that, as matter of fact, the presumption is not true. But that is all.

The authorities cited by counsel for plaintiff as to the effect of a failure to comply with a by-law or statute which requires a transfer on the books of a company or a surrender and reissue of a certificate when a shareholder sells his stock, do not apply to a case like this. If Russell, before his death, and after a sale of his thirty shares to Colburn, had retained the certificate and subsequently sold the shares to a third person and transferred the certificate to him and the latter had sued the bank, we would have had the situation represented by the case of *Bank* v. *Lainer and Handy,* 11 Wallace, 369, cited by plaintiff's counsel.

In *Railway Company* v. *Robins et al,* 35 Ohio St., 483, the shares were sold and the certificate delivered, but no transfer was made on the books of the company. Subsequently the original owner again sold the shares to a second purchaser and procured the company to issue to said second purchaser a new certificate on the representation that the original one was lost. The court held that the company was liable to the first purchaser as it should not have issued the second certificate without a sur-

render of the first. All the authorities cited concern the relations between the corporation and a third person purchasing shares from one of its stockholders. No case has been produced, nor has any been found by the court wherein it has been held that when a share-holder to whom a certificate of stock has been issued, himself sues the corporation in any kind of action based on the assumption that he is such share-holder, the corporation is precluded from showing that he has disposed of his stock and no longer has any interest therein, even though he still holds the certificate and has not surrendered the same as required by the rules of the bank on sale and transfer. The distinction between cases like those cited and the case at bar, seems to the court very obvious.

The plaintiff's petition will therefore be dismissed. The court having found that the plaintiff is not the owner of the shares of stock represented by the certificate in his possession, and it being obvious that, if said certificate is transferred to a third person, who is ignorant of the circumstances, it may impose a liability on the bank which it should not be required to assume, the prayer of the defendant's cross-petition will be granted and the certificate ordered surrendered and canceled.